IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>EUKA WADLINGTON,<br><br>        Defendant. | No. 3:98-cr-242<br><br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO REDUCE SENTENCE UNDER SECTION 404 OF THE FIRST STEP ACT** |

COMES NOW the defendant, through counsel, and submits the following brief in support of defendant's motion to reduce sentence under Section 404 of the First Step Act of 2018.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................2

PROCEDURAL HISTORY..........................................................................................................4

ARGUMENT ..............................................................................................................................7

   I.  THE DEFENDANT WAS CONVICTED OF A "COVERED OFFENSE" UNDER
      SECTION 404(a) OF THE FIRST STEP ACT ...................................................7

   II.  RELEVANT CONDUCT, AS FOUND BY THE PSR, HAS NO EFFECT ON THE
       DEFENDANT'S ELIGIBILITY FOR FIRST STEP ACT RELIEF................................12

   III.  THE COURT SHOULD EXERCISE ITS DISCRETION TO REDUCE MR.
        WADLINGTON'S SENTENCE ......................................................................26

CONCLUSION............................................................................................................................38

## INTRODUCTION

Mr. Wadlington is not the same person the court sentenced to life in prison on August 5, 1999.  In over two decades in the custody of the Bureau of Prisons, Mr. Wadlington has transformed himself from a man the court once described as a "defendant who has never shown remorse or accepted responsibility for very serious criminal conduct," to a man now respected by other inmates and prison staff because of his willingness to use his own criminal past as a tool to help other inmates make better choices than the ones he made to end up serving a mandatory life sentence.

Mr. Wadlington is serving life in prison because a jury convicted him of one count of conspiracy to distribute and possess with intent to distribute, measurable amounts of cocaine and crack, and one count of attempt to distribute cocaine, all in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2.  Because the government filed notice, pursuant to 21 U.S.C. § 851, that the defendant had two prior felony drug convictions, Mr. Wadlington was subject to a mandatory life sentence.

The jury made no drug quantity findings beyond a reasonable doubt.  The PSR, however, found Mr. Wadlington responsible for 6.8969 kilograms of cocaine powder, and 12.06 kilograms of crack.  After increases for specific offense characteristics, and his role in the offense, the defendant's total offense level was 46.  At CHC VI, Mr. Wadlington's guideline range was life.[1]

---

[1] Wadlington was also classified as a career offender because of the same two convictions that were listed in the § 851 notice.  Mr. Wadlington currently has a § 2241 motion pending in the Southern District of Illinois, challenging, under *Mathis v. United States*, 136 S. Ct. 2243 (2016), the use of these convictions to enhance his sentence under 21 U.S.C. § 841, and under the career offender guideline.  *Euka Wadlington v. T. G. Werlich*, No. 17-cv-00449-SMY.

In the instant case, Wadlington's CHC was increased from V to VI because of his career offender status.  However, his guideline calculations have never been driven by his career offender status, but rather, by the drug quantity.  Using the current ratios for converting cocaine and crack to CDWs yields 44,445 kilograms CDW which results in a reduction in defendant's

Mr. Wadlington requests a reduction in his sentence under Section 404 of the First Step Act of 2018.  The primary effect from the retroactive application of Section 2 of the Fair Sentencing Act of 2010 (FSA 2010), as authorized under Section 404(b) of the First Step Act, would be to reduce the defendant's statutory sentencing range on both counts from mandatory life, to zero to 30 years.  The defendant's guideline range would remain the same under the current guidelines, but such a change is not a prerequisite for a Section 404 sentence reduction.

The government will undoubtedly contest eligibility, arguing that eligibility should be based on the defendant's actual conduct, including drug quantities not found beyond a reasonable doubt by the jury, but, rather, by the drug amounts attributed to the defendant by the PSR and adopted by the sentencing court under a preponderance of the evidence standard.

The overwhelming trend in district court opinions throughout the United States since passage of the First Step Act has been to emphatically reject the government's argument that eligibility for a First Step Act sentence reduction hinges on the drug quantity attributed to the defendant by the PSR, and adopted by the court under a mere preponderance of the evidence standard.  In December, 2019, the Eighth Circuit ruled on the eligibility question, holding that "The First Step Act applies to offenses, not conduct . . . and it is [the defendant's] statute of conviction that determines his eligibility for relief."  *United States v. McDonald*, 944 F.3d 769, 772 (8th Cir. 2019).  Three other Circuit Courts of Appeal have also clearly repudiated the government's position.  *See United States v. Wirsing,* 943 F.3d 175, 185 (4th Cir. 2019) (the court rejected the government's argument that eligibility should be determined based upon defendant's relevant offense conduct); *United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019)

---

base offense level from 38 to 36, and yields a total offense level of 44, which becomes 43 under USSG Ch. 5, Part A, comment. (n.2), but still yields a guideline range of life.  At CHC V, the range is still life.

(concluding that First Step Act eligibility "depends only on the statute under which [a defendant] is convicted"); *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019) (holding that defendant was eligible for resentencing "because, and only because, the Fair Sentencing Act modified the statutory range for his offense.").

In the alternative, the government will argue that if the court finds the defendant eligible, it should nevertheless deny relief because of the nature and circumstances of the offense and the defendant's criminal history. To this, the defendant will respond that over the past 21 years he has worked hard to insure that past is not prologue, and will request the court to exercise its considerable discretion under Section 404(c) to reduce his sentence.

## **PROCEDURAL HISTORY**

On April 8, 1999, the government filed a second superseding indictment charging Wadlington, in count one, with conspiracy to distribute and possess with intent to distribute cocaine and crack in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. (Doc. 97). In count two, the government charged Wadlington with distribution of crack in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. 97). In count seven, the government charged Wadlington with attempt to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. (Doc. 97).[2] No quantities were alleged in the indictment. (Doc. 97).

On April 13, 1999, the government filed notice, pursuant to 21 U.S.C. § 851, that Wadlington was subject to enhanced penalties—namely, mandatory life imprisonment—based on two prior felony drug convictions, to wit: a March 1991 Illinois conviction (case number 88CR1839101) for delivery and manufacture of a controlled substance, for which he was

---

[2] The second superseding indictment had eight counts. Wadlington's co-defendants, Samuel L. Miller, Lee Page Driver, Terrance Hood, and Terrance McLoyd, were named in the remaining counts. (Doc. 97).

4

sentenced to three years confinement; and a March 1991 Illinois conviction (case number 90CR1154801) for delivery and manufacture of a controlled substance, for which he was sentenced to three years confinement.  (Doc. 103).

Wadlington proceeded to trial, and on May 10, 1999, the jury found him guilty of counts one (conspiracy to distribute) and seven (attempt to distribute) of the indictment and not guilty of count two (actual distribution) of the indictment.  (Doc. 162).  The jury made no quantity findings.

The PSR found Wadlington responsible for 6.8969 kilograms of cocaine and 12.06 kilograms of crack.  (PSR ¶ 61).  Under the 1998 Guideline Manual, these quantities translated to 242,579 kilograms of marijuana equivalent.  (PSR ¶ 65).  This resulted in a base offense level of 38 under USSG § 2D1.1(c)(1).  (PSR ¶ 66).  The PSR added two levels for possession of a firearm under USSG § 2D1.1(b)(1), four levels for being the organizer or leader of a group with five or more participants under USSG § 3B1.1(a), and two levels for use or attempted use of a person less than eighteen years of age to commit the offense under USSG § 3B1.4.  (PSR ¶¶ 68–71).  This resulted in a total offense level of 46.  (PSR ¶ 73).

The PSR assigned Wadlington 12 criminal history points, but dubbed him a career offender based on the same prior felony drug convictions subjecting him to an § 851 enhancement (two March 1991 Illinois convictions, listed in the PSR as possession with intent to distribute (PSR ¶¶ 79, 80), making his criminal history category VI under USSG § 4B1.1.[3]  (PSR

---

[3] Absent career offender status, Wadlington's criminal history category would be V.  (PSR ¶ 86–87).  Today, Wadlington's base offense level would be 36, and total offense level 44.  With a criminal history category five, Wadlington's guideline range would be life, but he would not be subject to a mandatory minimum life sentence.

¶¶ 82–87).  Based on an offense level of 46 and criminal history category VI, Wadlington's guideline range was life.  (PSR ¶ 137).

At sentencing, the court adopted the findings in the PSR, stating:

> [t]he evidence presented at trial and the evidence presented in this sentencing on balance is reliable and supports each and every one of the paragraphs of the presentence report, and I find that the presentence report correctly applies guidelines and the various provisions of the guidelines in determining what is the sentence in this case, and it leads to the conclusion that the offense level is 46, and this means that defendant, under the guidelines, will have a sentence of life in prison.

(Sent. Tr. 254–55).  But shortly thereafter, the court noted: "As to the amounts, we don't know exactly.  They had to be estimated.  I find that the presentence report accurately arrives at a reliable estimate of the amounts of cocaine and crack cocaine that Mr. Wadlington provided to these conspirators for sale and distribution in Clinton, Iowa."  (Sent. Tr. p. 257).

The court sentenced Wadlington to concurrent terms of life imprisonment on both count one (citing 21 U.S.C. § 846) and count seven (citing 21 U.S.C. §§ 841(a)(1) and 846), to be followed by a 10-year term of supervised release.  (Doc. 193).

Wadlington appealed, raising several prosecutorial misconduct claims and challenging his sentence based on improper double counting of his two prior convictions and error in calculating the drug amount.  *United States v. Wadlington*, 233 F.3d 1067 (8th Cir. 2000).  The Eighth Circuit rejected Wadlington's claims, affirming his conviction and sentence.[4]  *Id.*

On November 13, 2002, Wadlington filed a § 2255 petition asserting entitlement to relief based on actual innocence and a sentence imposed in violation of *Apprendi* and *Blakely*.  (Docs. 361, 362).  The district court denied Wadlington's petition.  (Doc. 423).  Wadlington appealed

---

[4] Judge Heaney dissented, concluding the government misused the grand jury process thus the matter should be remanded to the district court for determination of whether there was sufficient evidence supporting Wadlington's conviction absent grand jury testimony from two witnesses. *Id.* at 1082-83.

(Doc. 426), and the Eighth Circuit affirmed the district court's denial of relief.  *Wadlington v. United States*, 428 F.3d 779, 785-86 (8th Cir. 2006).

In September 2008, Wadlington sought reduction of his sentence under Amendments 706, 711, and 715.  (Doc. 494).  The court denied Wadlington's motion, concluding he was ineligible for relief because the amount of crack cocaine involved in his life sentence (4.5 kilograms) exceeded the amount allowing an Amendment 706 reduction.  (Doc. 507).  The court further noted the "severe sentence was necessary to protect the public from defendant, who has never shown remorse or accepted responsibility for very serious criminal conduct."[5]  (Doc. 507).

In April 2015, Wadlington again asked the court to reduce his sentence.  (Doc. 535).  The court denied Wadlington's request without explanation.  (Doc. 538).

## ARGUMENT

I.  **THE DEFENDANT WAS CONVICTED OF A "COVERED OFFENSE" UNDER SECTION 404(a) OF THE FIRST STEP ACT.**

On August 3, 2010, President Obama signed into law FSA 2010, which increased the quantities of cocaine base necessary to trigger statutory penalties under the various provisions of 21 U.S.C. § 841(b).  In particular, Section Two of FSA 2010 increased the amount of cocaine base necessary for a § 841(b)(1)(A) conviction from 50 to 280 grams, and the amount of cocaine base necessary for a § 841(b)(1)(B) conviction from 5 grams to 28 grams.  Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010).  The purpose of FSA 2010 was to "restore fairness to federal cocaine sentencing," and to "decrease racial disparities and help restore confidence in the criminal justice system, especially in minority communities."  *Id*. (Preamble).  In 2012, the Supreme Court determined that retroactive application of FSA 2010 was limited to cases where defendants

---

[5] Wadlington appealed, and the Eighth Circuit summarily affirmed.  (Doc. 511).

committed their offense conduct before the August 3, 2010, effective date of the statute, but were not sentenced until after that date. *See Dorsey v. United States*, 567 U.S. 260 (2012).

On December 18, 2018, the First Step Act was signed into law. *See* 132 Stat. 5194. Section 404 of the First Step Act expands upon the limited degree of FSA 2010 retroactivity as determined by *Dorsey*, and permits a district court that "imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the [FSA 2010] were in effect at the time the covered offense was committed." *Id*. § 404(b); *see also* 18 U.S.C. § 3582(c)(1)(B) (authorizing courts to modify a sentence of imprisonment "to the extent otherwise expressly permitted by statute"). A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3[6] of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." *Id*. § 404(a). The First Step Act applies only to defendants who were not already sentenced in accordance with FSA 2010. *Id*. § 404(c). It also restricts courts from considering a motion for a sentence reduction if a defendant has already pursued a § 404 sentence reduction, but had his motion "denied after a complete review of the motion on the merits." *Id*.

Although no subsection of 21 U.S.C. § 841(b)(1) was cited in the second superseding indictment, or in the court's judgment, the court and the parties treated the defendant's sentencing as if he had been convicted under 21 U.S.C. § 841(b)(1)(A) on count one, and on count seven under § 841(b)(1) (B), both enhanced under 21 U.S.C. § 851. (Doc. 193, p. 7; PSR 136). Clearly, the defendant's crimes were committed prior to August 3, 2010. (Doc. 193, p. 1; Doc. 97). The statutory penalties for 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B) were modified

---

[6] Section 3 of the FSA eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Pub. L. No. 111-220, § 3; 124 Stat. 2372.

by Section 2 of FSA 2010.  Therefore, the defendant was convicted of a "covered offense" under Section 404(a) of the First Step Act.  *United States v. McDonald*, 944 F.3d at 772; *United States v. Beamus*, 943 F.3d at 791; *United States v. Wirsing*, 943 F.3d at 185.

Because the second superseding indictment did not charge, and the jury did not find beyond a reasonable doubt that the defendant was responsible for any drug quantity, other than a measurable amount, the defendant would only be subject to the penalties under 21 U.S.C. § 841(b)(1)(C) under FSA 2010.  *United States v. Edwards*, Case No. 95-cr-508-5, ECF No. 1210, pp. 5-6 (N.D. Ill. Aug. 8, 2019).  The retroactive application of Section 2 of FSA 2010 would reduce the defendant's statutory sentencing range on count one from mandatory life under 21 U.S.C. §§ 841(b)(1)(A) and 851, to zero to 30 years under §§ 841(b)(1)(C) and 851.[7]  His statutory sentencing range on count seven would be similarly reduced, from 10 years to life under §§ 841(b)(1)(B) and 851, to zero to 30 years under §§ 841(b)(1)(C) and 851.

The defendant was charged in count one with conspiracy involving both crack and powder cocaine, and in count seven with distributing powder cocaine.  (Doc. 97).  The PSR also found defendant responsible for significant quantities of both crack and powder cocaine.  (PSR 61).  Nevertheless, he was convicted of a covered offense under Section 404.

In *McDonald*, the panel found it irrelevant to the eligibility determination that McDonald was actually sentenced under a guideline based on powder cocaine, rather than cocaine base. This was because the guideline sentencing calculation did "not change the fact that he was convicted . . . for distributing cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(iii) (1996)."

---

[7] Today neither of the defendant's § 851 prior drug felony convictions would qualify as "serious drug felonies" under 21 U.S.C. § 802(57) because he did not serve more than one year of incarceration on either conviction.  (PSR 79, 80).  Without the § 851 enhancements, the defendant's statutory maximum would be only 20 years on each count.

*McDonald*, 944 F.3d at 772.  Because eligibility for the First Step Act is based on "offenses, not conduct," a defendant need only show three things to be eligible for a retroactive sentence reduction:  (1) he violated a federal statute; (2) the statutory penalties for that violation were modified by section 2 or 3 of the Fair Sentencing Act; and (3) the violation was committed before August 3, 2010.  *Id.*[8]

Because of the drug quantities attributed to the defendant, coupled with the specific offense characteristics applied in the PSR, his guideline range does not change despite the fact that there would be a slight change in his offense level under current guidelines.  At his original sentencing, the defendant's base offense level was 38, plus eight levels for specific offense characteristics and a leadership enhancement.  Whether or not the crack and powder are converted using the current 3,571 to 1 gram ratio, and then combined, the defendant's current base offense level would be 36.  USSG § 2D1.1(c)(2).  Applying the same enhancements that applied at his original sentencing, the defendant's total offense level would be 44, but is capped at 43 by USSG Ch. 5, Part A, comment. (n.2).  At total offense level 43, CHC VI, the defendant's guideline range would still be life, but not mandatory life.  Even if he is no longer a career offender, and therefore a CHC V (12 criminal history points), rather than CHC VI, his advisory guideline range would remain life.

Regardless of whether the defendant's guideline range changes or not, he was still convicted of a "covered offense" as defined in Section 404(a) of the First Step Act.  In *Beamus*, the Sixth Circuit Court of Appeals made it crystal clear that a change in the defendant's guideline

---

[8] District courts have frequently found that an offense that involves both crack and some other drug is a covered offense.  *See, e.g.*, *United States v. Miles*, 2019 WL 4024776 (D.S.C. Aug. 27, 2019); *United States v. Hughes*, 2019 WL 4621973 (W.D. Mich. Sept. 24, 2019); *United States v. Williams*, 2019 WL 4014241 (N.D. Ill. Aug. 25, 2019).

range is not a requirement for a sentence reduction under Section 404 of the First Step Act of

2018. *United States v. Beamus*, 943 F.3d at 792. In *Beamus*, retroactive application of FSA

2010, as allowed under Section 404(b) of the First Step Act, did result in a reduction of Beamus'

guideline range, because it reduced his career offender base offense level from 37 to 34. *Id.* at

792. However, the court emphasized that this fact played no part in its determination that the

defendant was eligible for a sentence reduction:

> It's true, as the government notes, that the Fair Sentencing Act's changes to the
> statutory penalty for Beamus' drug offense also would have affected his guideline
> range. But that's happenstance in this instance. Beamus is eligible for resentencing
> because, and only because, the Fair Sentencing Act modified the statutory range for
> his offense. That the sentencing guidelines also would have applied differently
> does not affect his eligibility for resentencing.

*Id.* In its holding, the Sixth Circuit joined the "vast majority" of district courts to consider the

issue. *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019); *see also United States*

*v. Shelton*, 2019 WL 1598921, *2 (D.S.C. Apr. 15, 2019); *United States v. Boulding*, 379 F.

Supp. 3d 646, 652 (W.D. Mich. 2019).

In *Shelton,* 2019 WL 1598921 at *2, in the context of rejecting the government's

argument that a reduction to the guideline range was necessary for First Step Act eligibility, the

court stated:

> Contrary to the government's suggestion, however, nothing in the First Step Act
> conditions eligibility for a reduced sentence on a lowered guideline range. The Act
> provides authority to impose a reduced sentence when application of the Fair
> Sentencing Act results in a lower statutory range. Thus, whether the guideline
> range changes or not, defendant may be considered for a reduced sentence of
> incarceration where his statutory mandatory minimum sentence is lowered. In
> deciding whether to impose a reduced sentence, the court will consider the new
> statutory range, the guideline range, the factors in 18 U.S.C. § 3553(a), and
> evidence of post-sentencing mitigation.

Likewise, in *United States v. Boulding*, 379 F. Supp. 3d at 652, the court stated that,

"[e]ligibility turns entirely on the categorical nature of the prior conviction. All other issues,

including the proper quantity determinations, are part of a reviewing court's discretionary call on

whether to modify an eligible defendant's sentence."

## II. RELEVANT CONDUCT, AS FOUND BY THE PSR, HAS NO EFFECT ON THE DEFENDANT'S ELIGIBILITY FOR FIRST STEP ACT RELIEF.

On December 11, 2019, the Eighth Circuit squarely held in a published decision that the

"First Step Act applies to offenses, not conduct . . . and it is [a defendant's] statute of conviction

that determines his eligibility for relief." *McDonald*, 944 F.3d at 772.  In so holding, the panel

joined a majority of courts that have considered the issue, including three Courts of Appeals and

numerous district courts.  *See, e.g., United States v. Wirsing,* 943 F.3d 175, 182 (4th Cir. 2019)

(adopting defendant's "statute-of-conviction theory of eligibility" and rejecting the government's

assertion that offense conduct or relevant conduct can preclude eligibility); *United States v.

Jackson*, 945 F.3d 315 (5th Cir. 2019) (concluding that First Step Act eligibility "depends only

on the statute under which [a defendant] is convicted"); *United States v. Beamus*, 943 F.3d 789,

792 (6th Cir. 2019) ("Beamus is eligible for resentencing because, and only because, the Fair

Sentencing Act modified the statutory range for his offense."); *United States v. Rose*, 379 F.

Supp. 3d 223, 228 (S.D.N.Y. 2019) (agreeing with the "vast majority of courts" that have

determined First Step Act eligibility turns on the statute of conviction, not on a defendant's

actual conduct); *United States v. Boulding*, 379 F. Supp. 3d 646, 652 (W.D. Mich. 2019)

("Eligibility turns entirely on the categorical nature of the prior conviction.  All other issues,

including the proper quantity determinations, are part of a reviewing court's discretionary call on

whether to modify an eligible defendant's sentence."); *United States v. Mabry*, No. 3:07-cr-28-

02, 2019 WL 6486012, *3 (E.D. Va. Oct. 31, 2019) (holding that the plain language of § 404(b)

compels a conclusion that eligibility for a First Step Act sentence reduction "does not depend on

quantity at all"); *United States v. Byrd*, SA-03-cr-547-xr, 2019 WL 6493939, *1 (W.D. Tex. Dec.

3, 2019) (agreeing with the "vast majority" of cases that have concluded that the statute of conviction, not a defendant's actual conduct, controls eligibility); *United States v. Wright*, 2019 WL 5569674, *2 (M.D. Pa. Oct. 29, 2019) (joining other courts that have concluded the First Step Act "applies to offenses and not conduct"); *United States v. Stone*, No. 1:96-cr-403, 2019 WL 2475750, *2 (N.D. Ohio June 13, 2019) (holding that First Step Act eligibility turns solely on "whether a defendant's offense of conviction was a cocaine base offense affected by the Fair Sentencing Act" and collecting cases).

In the Northern District of Iowa, Chief Judge Strand ruled that the statutory quantity charged in the indictment and found by the jury beyond a reasonable doubt (50 grams) determined eligibility, rather than the much higher quantity (1,179.6 grams) of crack attributed to the defendant in the PSR. *United States v. Ingram*, No. CR07-4056-LTS, ECF No. 303, pp. 3, 6-7 (N.D. Iowa Sept. 10, 2019); *see also*, *United States v. Johnson*, No. CR06-4031-LTS, ECF No. 106, pp. 15-16 (N.D. Iowa Aug. 20, 2019) (concluding, where defendant pled guilty under plea agreement containing stipulation to responsibility for more than 250 grams, and the PSR attributed 347.2 grams to the defendant, that the statutory quantity charged in the indictment to which the defendant pled guilty determined eligibility.).[9]  In *Ingram*, the court rejected the government's statutory construction argument because it found the weight of contrary authority to be persuasive. *Ingram*, at p. 6.  Chief Judge Strand's analysis was simple and direct:  "If Congress wanted courts to consider other conduct, rather than the charged offense, it would have stated that." *Id*. at 16.  In *United States v. Simmons*, No. 4:96-cr-112-SMR, ECF No. 534 (S.D. Iowa Nov. 25, 2019), Judge Rose also adopted the majority view endorsed in *McDonald*,

---

[9] The court in *Johnson* ultimately denied a reduction because of the nature of the defendant's Rule 11(c)(1)(C) plea agreement.  *Id*. at p. 20.

*Wirsing* and *Beamus*.

Recently, Chief Judge Jarvey appears to have joined the majority view, at least in cases not involving plea agreement stipulations to crack quantities sufficient to meet the threshold amounts established by Section 2 of FSA 2010. *United States v. Christopher James McGee*, S.D. Iowa Case No. 3:07-cr-00634-JAJ-SBJ, Doc. 257 (Dec. 5, 2019). Unlike the instant case, the jury in Mr. McGee's case specifically found him guilty of conspiring to possess and distribute "fifty (50) grams or more of crack cocaine" on count one of the indictment, and possessing with intent to distribute "less than five grams" on count two of the indictment. *United States v. McGee*, Defendant's Motion, Doc. 253, pp. 3-4. In *McGee*, the final PSR attributed 1,643 grams of cocaine base to the defendant. *United States v. McGee*, Govt. Brief, Doc. 254, ¶2. Notwithstanding the government's arguments to the contrary, Chief Judge Jarvey concluded "that a finding of 50 grams and more of crack cocaine triggers a punishment under 21 U.S.C. § 841(b)(1)(B) rather than (b)(1)(A)." *Id*., Doc. 257, p. 1. In the instant case, the jury only found the defendant responsible for a measurable amount of crack.

The statute-of-conviction test adopted in *Wirsing* and *McDonald* has been adopted because district courts throughout the United States find the arguments supporting it to be persuasive. *See*, *e.g*, *United States v. Ingram*, No. 1:07-cr-233, 2019 WL 4727466, *4 (W.D. Mich. Sept. 27, 2019); *United States v. Hill*, No. 4:10-cr-5-1, 2019 WL 4647259, at *1 (E.D. Tenn. Sept. 24, 2019) (court cites the "natural reading and grammatical structure of the text," *Apprendi* and *Alleyne*, and the rule of lenity, in finding that "the defendant's conviction, not the specific offense conduct, controls whether the offense is a 'covered offense' within the meaning of the First Step Act."); *United States v. Khut*, No. 5-cr-10262, 2019 WL 4345294, *2 (D. Mass. Sept. 12, 2019).

14

One of the reasons the vast majority of courts have adopted the "statute-of-conviction theory of eligibility" is because it is well grounded in fundamental principles of statutory construction and grammatical analysis. *United States v. Wirsing*, 943 F.3d at 185-86; *see also United States v. Rose*, 379 F.Supp.3d at 228-229; *United States v. Askins*, 2019 WL 3800227, *3, *5 (D. Ariz. Aug. 6, 2019); *United States v. Thompson*, 2019 WL 4040403, *5-6 (W.D. Pa. Aug. 27, 2019).

As the *McDonald* court found, the language of Section 404 is straightforward, and lends itself to a simple eligibility test. The government, however, urges the court to engraft onto this simple language an additional test:  that the defendant must also show that his relevant conduct did not involve 280 grams or more of crack.  As Chief Judge Strand in the Northern District of Iowa observed, "If Congress wanted courts to consider other conduct, rather than the charged offense, it would have stated that." *United States v. Ingram*, No. CR07-4056-LTS, ECF No. 303, p. 16 (N.D. Iowa, Sept. 10, 2019).

The government typically argues that by referring to a "violation" that was "committed" on a particular date, Section 404(a) requires the court to consider the defendant's actual conduct rather than limiting the eligibility requirement to the minimum drug quantity that must be proven as a statutory element of the offense.  The government never explains why the insertion of a date-based qualifier means that Congress intended courts to examine the underlying facts of a defendant's case in order to determine eligibility.  The government misperceives the purpose of the phrase "committed before August 3, 2010," which only makes Sections 2 and 3 retroactive to a particular event.  By defining a "covered offense" as one that was "committed before August 3, 2010," and authorizing courts to impose a reduced sentence "as if Sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed," Section 404 makes Sections 2 and

3 of FSA 2010 retroactive to "violations" of the law, consisting of their elements, that were committed before August 3, 2010.  The "as if" language in the statute simply means that Mr. Wadlington's conviction must be limited to the penalty ranges of § 841(b)(1)(C).

The government argues that eligibility is keyed not to the statute of conviction, but to the "violation" the defendant "committed"; it urges that a "violation" that was "committed" on a particular date grounds the eligibility requirement in the defendant's actual conduct.  This argument was rejected by the court in *Wirsing*, which, in turn, was relied upon by the panel in *McDonald*.  *McDonald*, 944 F.3d at 772 (citing *Wirsing*, 943 F.3d at 186).

The other principal reason that the majority of courts have adopted the "statute-of-conviction theory of eligibility" is because it does not run afoul of the constitutional principles elucidated in *Apprendi*, *Alleyne* and *Burrage*.[10]  In *Apprendi*, the Supreme Court held that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," and "must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 483 n.10, 490.  In *Alleyne*, the court reiterated that a "fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed," 570 U.S. at 107–08, and held that "because the legally prescribed range *is* the penalty affixed to the crime . . . it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense."  *Id.* at 112.  The Court concluded that any fact that "aggravates the legally prescribed range of allowable sentences . . . constitutes an element of a separate, aggravated offense that . . . must, therefore, be submitted to the jury and found beyond a reasonable doubt."  *Id.* at 115–16.

---

[10] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013); *Burrage v. United States*, 571 U.S. 204 (2014).

In *Burrage*, the Court applied these holdings to a fact, like drug quantity, that increases the penalty range under the statute of conviction:

> Because the "death results" enhancement increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt. . . . Thus, the crime charged in count 2 of [the] superseding indictment has two principal elements: (i) knowing or intentional distribution of heroin, § 841(a)(1), and (ii) death caused by ("resulting from") the use of that drug, § 841(b)(1)(C). . . . Violation of § 841(a)(1) is thus a lesser included offense of the crime charged in count 2. It is undisputed that Burrage is guilty of that lesser included offense.

571 U.S. at 210 & n.3.

An element is a fact that necessarily must be found by a jury beyond a reasonable doubt in order to convict a defendant of an offense or any aggravated offense. *See Alleyne*, 570 U.S. at 115–16. The element is the same whether the defendant was convicted by a jury or pled guilty: it is the drug quantity necessary for conviction under § 841(b)(1)(A). *See United States v. Thompson*, 2019 WL 4040403, *8 (W.D. Pa. Aug. 27, 2019) (finding that the amount of crack the defendant "necessarily admitted" was the charged amount of 5 grams, not the higher amount proffered by the government at his change of plea hearing; to find otherwise effectively allows the government to amend the indictment after sentencing).

Numerous cases support the argument that the constitutional principles expressed in *Apprendi*, *Alleyne* and *Burrage* must apply when determining First Step Act eligibility. In *United States v. Stone*, No. 96-403, ECF No. 534, *5 (N.D. Ohio June 13, 2019), Stone was convicted at trial of conspiracy to distribute or possess with intent to distribute cocaine and/or cocaine base, but the jury made no finding as to quantity for either drug offense. The court explained that *Apprendi* and *Alleyne* apply to resentencings under the Act because they are simply a recognition of a right established by the Constitution that has existed since the adoption of the Constitution. In *United States v. Ancrum*, 2019 WL 2110589, at *3, the court "join[ed]

17

other courts in finding that [*Apprendi* and *Alleyne*] are applicable in the context of the First Step

Act."  The court in *United States v. Stanback*, 2019 WL 1976445, *3 (W.D. Va. May 2, 2019),

concluded that "[u]nder *Alleyne*, this court is not free to ignore [the jury] finding," and that

"Congress, when drafting the First Step Act of 2018, surely did not intend for courts to disregard

the last six years of Supreme Court federal sentencing jurisprudence and this Court declines to

do so."  The Connecticut District Court based eligibility on the drug weight to which defendant

pled guilty (50 grams or more), not the drug weight found by the judge for sentencing purposes

(675 grams).  The court relied on the plain language of the statute, the rule of lenity, and the

*Apprendi* line of decisions, stating, "[w]hile *Alleyne* and *Apprendi* do not provide retroactive

relief, Congress legislates in the context provided by constitutional principles."  *See United*

*States v. Michael Allen*, 2019 WL 1877072, at *3–4; *United States v. Torrence Allen*, No. 0:95-

6008, ECF No. 94, at p. 7 (same); *United States v. Simmons*, No. 4:96-cr-112-SMR, ECF No.

534, at pp. 4-5.

   In *United States v. Thompson*, 2019 WL 4040403, at *6, the court observes that the

authority granted under the First Step Act requires a "present-day act of imposing a sentence,"

and that it must be presumed that Congress knew and understood the "established constitutional

principles that could guide that undertaking."  *Id.*  The court recognized that although *Apprendi*

and *Alleyne* do not apply retroactively on collateral review, Section 404 is not collateral review,

but is, rather, direct review, independently authorized by the First Step Act.  *Thompson*, 2019

WL 4040403, at *6.

   The statutory construction argument usually advanced by the government "depends on

two erroneous interpretative choices."  *Rose*, 379 F. Supp. 3d 223 at 228.  First, it misconstrues

the dependent clause, "the statutory penalties for which were modified by Section 2 or 3 of the

Fair Sentencing Act of 2010" (hereinafter "Penalties Clause"), as modifying the noun

"violation," rather than modifying the noun phrase "federal criminal statute." *Id*. As the court

explained in *Rose*:

> When given its most natural reading, the "penalties" clause modifies the adjacent
> noun phrase, "federal criminal statute." As a general principle, courts interpret the
> text of criminal statutes in a manner consistent with "ordinary English grammar"
> and rules of usage. *Flores-Figueroa v. United States*, 556 U.S. 646, 650, 652
> (2009). One such rule is that a modifier is presumed to apply to the noun or pronoun
> closest to it. *See Lopez v. Gonzales*, 549 U.S. 47, 56 (2006) (explaining that courts
> must not "divorce a noun from the modifier next to it without some extraordinary
> reason") . . . . Here, the "penalties" clause is most naturally read as modifying
> "federal criminal statute," the noun phrase immediately next to it. Indeed, Congress
> appears to have deliberately inserted "federal criminal statute" after the word
> "violation" and added the word "statutory" before the word "penalties" to achieve
> this exact result.

*Id*. Further, Congress's use of the past tense, i.e., "were modified," in the "penalties" clause

confirms that the clause was intended to modify "statute," not "violation." *Id*. at 229. The *Rose*

court noted:

> Because the Fair Sentencing Act was not retroactive, it could not have "modified"
> any penalties imposed for violations "committed before August 3, 2010." Rather,
> the only "statutory penalties" that the Fair Sentencing Act could have modified
> were the crack-cocaine penalties provided in the Controlled Substances Act.

*Id*.; *see also Boulding*, 379 F. Supp. 3d at 651 (if the "offense of conviction was a crack cocaine

offense affected by the Fair Sentencing Act[,] the defendant is categorically eligible for

consideration regardless of actual quantities"); *United States v. Davis*, 2019 WL 1054554, *2–3

(W.D.N.Y. Mar. 6, 2019) (the statute of conviction, not actual conduct, controls eligibility under

the First Step Act); *United States v. Broussard*, No. 02-00210, ECF No. 160, p. 5 (D. Minn. Apr.

19, 2019) (First Step Act eligibility "is determined by looking at the statute of conviction, not the

defendant's conduct"); *United States v. Haynes*, No. 4-cr-20045 (C.D. Ill. May 1, 2019) (same);

*United States v. Cole*, 2019 WL 3406872, *3 (N.D. Ind. July 29, 2019) (collecting cases and

noting that "Nearly every district court considering the issue has interpreted the plain language of the First Step Act, and held that it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act.").

Second, the government's usual argument misconstrues "violation" to mean the "actual conduct underlying the offense, rather than the elements of the offense." *Rose*, 379 F. Supp. 3d at 228. The government's argument is contrary to the plain meaning of "violation." Unless and until a defendant is convicted of the elements of an offense, there is no violation. The Supreme Court has repeatedly referred to a "violation" of a statute as consisting of the elements of the statute of conviction, and has expressly held that enhancing facts set forth in 21 U.S.C. § 841(b)(1) are "element[s] that must be submitted to the jury and found beyond a reasonable doubt." *Burrage v. United States*, 571 U.S. 204, 210 & n.3 (2014); s*ee also Torres v. Lynch*, 136 S. Ct. 1619, 1624 (2016) ("[T]he substantive elements 'primarily define[]' the behavior that the statute calls a 'violation' of federal law."); *Carr v. United States*, 560 U.S. 438, 446 (2010); *United States v. Raynor*, 302 U.S. 540, 553 (1938) ("[T]hat statute requires the existence of four distinct elements before the accused can be held guilty of violating it."). Congress incorporated the term "violation" from the text of § 841. *See* 21 U.S.C. § 841(b)(1)(A) (referring to "a violation" of subsection (a)); *id*. § 841(b)(1)(B) (same). If Congress intended "violation" to refer to "relevant conduct," it could have defined a "covered offense" as a "violation of Section 841(b)(1)(A) that involved at least 280 grams of cocaine base as determined under the relevant conduct provisions of the United States Sentencing Guidelines." It did not.

The government will assert that *Sedima*, *S.P.R.L. v. Imrex Co*., 473 U.S. 479, 489 (1985), *United States v. Hayes*, 555 U.S. 415 (2009), and *Nijhawan v. Holder*, 557 U.S. 29, 32 (2009), support its "violation" argument. These cases, however, are not on point, as explained by the

district court in *United States v. Williams*, 402 F. Supp. 3d 442, 446-448 (N.D. Ill. 2019); *see also United States v. Phillips*, No. 3:05-cr-00562-JEG, Doc. 396, at pp. 7-10.

The issue in *Sedima*, as characterized by Senior Judge Gritzner in *Phillips*, was "whether the defendant had to have been criminally convicted of a predicate offense, or for a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) to constitute a 'racketeering activity' in order to maintain a civil RICO action." *United States v. Phillips*, No. 3:05-cr-00562-JEG, Doc. 396, at 8 (citing *Sedima*, 473 U.S. at 485). The term "violation" in the civil RICO statute did not require a criminal conviction, but referred "only to a failure to adhere to legal requirements." *Sedima*, at 489. The *Sedima* court considered the term "violation" narrowly in the context of the criminal and civil RICO statutes, and was not construing the plain meaning of the term. The *Sedima* Court did not define the term offense. In *Williams*, the district court explained that the government's focus on *Sedima*'s interpretation of the word "violation" overemphasizes the significance of that point in the *Sedima* Court's overall analysis. *Williams*, 402 F. Supp. 3d at 446-47.

In *Hayes*, the Supreme Court was not directly interpreting the word "offense." *Williams*, 402 F. Supp. 3d at 447. The question in *Hayes* "was not whether the requirement of the use of force or a deadly weapon was defined based on the statutory elements of the crime or instead based on actual conduct." *Id.* at 447 (citing *Hayes*, 555 U.S. at 421). The question instead was whether the later clauses defining the relationship between the aggressor and the victim should be understood to require that the relationship was an element of the predicate offense. *Hayes*, 555 U.S. at 418. As explained by the court in *Williams*, the Supreme Court did not abandon the categorical approach to the requirement that the crime be violent and it certainly did not hold that terms like "crime," "offense," or even "violation" could or should always be understood to refer

21

only to actual conduct rather than the elements of the crime of conviction. *Williams*, 402 F. Supp. 3d at 447.

The statute considered in *Nijhawan v. Holder* is quite different from Section 404(a) of the First Step Act. The immigration statute at issue in *Nijhawan* described an "offense that involves fraud or deceit in which the loss to the victims exceeds $10,000." *Id*. (citing 8 U.S.C. § 1101(a)(43)(M)(i)). In *Nijhawan*, the court found that the words "in which" strongly implied an individualized factual inquiry. *Nijhawan*, 557 U.S. at 37–39. As the *Williams* court emphasizes, there is no such clause in the pertinent provision of the First Step Act. *Williams*, 402 F. Supp. 3d at 447. The *Nijhawan* court expressly acknowledged that the categorical approach is sometimes appropriate and that words such as "crime, felony, offense, and the like sometimes refer to a generic crime . . . and sometimes refer to the specific acts in which an offender engaged on a specific occasion." *Nijhawan* at 33–34. There is no language in the elements of 21 U.S.C. § 841 that would require a conduct-specific approach for those elements to square with the language of the First Step Act. *United States v. Phillips*, No. 3:05-cr-00562-JEG, Doc. 396 at pp. 9–10 (citing *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019), and rejecting the government's proposed "case-specific approach" to save the residual clause of 18 U.S.C. § 924(c) against a vagueness challenge, reasoning such an approach could not "be squared with the statute's text, context, and history"); *Torres v. Lynch*, 136 S. Ct. at 1624 ("The substantive elements 'primarily define[] the behavior that the statute calls a 'violation' of federal law . . . .") (first alteration in original) (quoting *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 18 (2006)).

The *Williams* court found additional support for its analysis in *Hughey v. United States*, 495 U.S. 411, 415 (1990), which dealt with the definition of "offense" in the context of a restitution statute. The court found that a "straightforward reading" of the word "offense" is

limited to the offense of conviction.  *Williams*, 402 F. Supp. 3d at 446 (quoting *Hughey*, 495 U.S. at 416).  The *Hughey* Court explained that "had Congress intended to permit a victim to recover from losses stemming from all conduct attributable to the defendant, including conduct unrelated to the offense of conviction, Congress would likely have chosen language other than 'the offense,' which refers without question to the offense of conviction[.]"  *Hughey*, 496 U.S. at 418.  More recently, in *Gamble v. United States*, 139 S. Ct. 1960, 1965 (2019), in the context of addressing the dual sovereignty doctrine, the court explained that the term "offense" was understood – at least at the founding – to be "'defined by a law' so that conduct that violates both state and federal law is not one offense but two."  *Williams*, 402 F. Supp. 3d at 446, n.4 (citing *Gamble*, 139 S. Ct. at 1965).

The government will assert that using actual conduct resting on factual determinations made at sentencing would not violate the holdings in *Apprendi* and *Alleyne* because the First Step Act only authorizes courts to reduce a sentence, and because the ultimate decision to reduce is discretionary.  The government, of course, ignores the fact that at the defendant's original sentencing, the court's factual determinations were only required to be made by a preponderance of the evidence, not proof beyond a reasonable doubt.

Although it is true that Section 404 only allows the district court to reduce sentences, that is beside the point.  As explained by the court in *Boulding*, "when looking back and considering the sentencing array 'as if' the Fair Sentencing Act thresholds were in effect, the court must be constrained for determining the new basis of conviction by what the defendant admitted, or the jury found, as the factual basis for the original conviction, and not by what the PSR later determined as relevant conduct for sentencing guidelines."  *Boulding*, 379 F. Supp. 3d at 656.

Here, defendant's post-FSA 2010 statutory range based on his offense of conviction is lower than the statutory range based on relevant conduct. Denial of relief under Section 404 of the First Step Act based upon relevant conduct proven by only a preponderance of the evidence would violate the fundamental principle of *Apprendi* and *Alleyne*, i.e., any fact that increases the defendant's statutory range (such as drug quantity) must be charged in the indictment and proven beyond a reasonable doubt to a jury or admitted by the defendant as an element in his plea to the charge in the indictment. *See Rose*, 379 F. Supp. 3d at 231 (Congress "could not have intended this court to ignore . . . changes in the laws since the original sentencing, such as *Alleyne*."); *Boulding*, 379 F. Supp. 3d at 656, n.6 (finding that "*Apprendi* and *Alleyne* ha[ve] genuine bite here," because if the "new thresholds had been in effect . . ., they would only have permitted a count one conviction under Section 841(b)(1)(B)(iii) because quantity is an essential element of the A(iii) or B(iii) offense. [That] *Alleyne* and *Apprendi* have not been extended retroactively on collateral review . . . is different than saying they have no significance in making the 'as if' sentencing decision called for under the First Step Act."); *United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. May 13, 2019) ("[T]his court joins other courts in finding that [*Alleyne* and *Apprendi*] are applicable [to] the First Step Act."); *United States v. Francis*, 2019 WL 1983254 (S.D. Ala. May 3, 2019) (declining to "violate *Apprendi* by finding unilaterally that the conspiracy involved more than 280 grams of crack"); *United States v. Allen*, 384 F. Supp. 3d 238, 243 (D. Conn. 2019) ("Construing Section 404 in the context provided by *Apprendi* and *Alleyne*, courts should reject a reading of the statute that would preclude eligibility for relief under the First Step Act due to a judicial finding of drug quantity many years ago."); *United States v. Simons,* 375 F. Supp. 3d at 381 (E.D.N.Y. 2019) ("[W]hile findings by a [sentencing] judge may be used to determine a sentence within the statutory penalties, [they] cannot change

the mandatory minimums now applicable."); *United States v. Allen*, No. 95-6008, ECF No. 94 (S.D. Fla. Apr. 15, 2019) ("[I]n imposing the modified sentence, the court must consider *Alleyne* and *Apprendi*" because "[w]hen Congress enacts statutes, it may be presumed that Congress is aware of relevant judicial precedent."). Section 404(b) authorizes courts to "impose" – present tense – a reduced sentence, and any sentence imposed today must comport with *Apprendi* and *Alleyne*.

The government will also claim that because the First Step Act does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*, those cases are inapplicable. This appears to be a novel principle of statutory interpretation that ignores the well-established principle that Congress is presumed to intend that its laws comply with the Constitution. *Rust v. Sullivan*, 500 U.S. 173, 191 (1991); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988); *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979) (holding that it is presumed "Congress was thoroughly familiar with important precedents from [the Supreme Court] and other federal courts and that it expected its enactments to be interpreted in conformity with them"). The district court for the Western District of Pennsylvania emphasized this point, stating that the authority granted under the First Step Act requires a "present-day act of imposing a sentence," and it must be presumed that Congress knew and understood the "established constitutional principles that could guide that undertaking." *United States v. Thompson*, 2019 WL 4040403, *6 (W.D. Pa. Aug. 27, 2019). The *Thompson* court recognized the logic of Judge Pratt's decision in *United States v. Dodd*, 372 F. Supp. 3d 795, 797–98 (S.D. Iowa 2019), that although *Apprendi* and *Alleyne* do not apply retroactively on collateral review, Section 404 is not collateral review, but is, rather, direct review, independently authorized by the First Step Act. *Thompson*, 2019 WL 4040403, at *6.

Lately, the government has been mistakenly asserting that the Eleventh Circuit in *United States v. Means*, 2019 WL 4302941, at *2 (11th Cir. Sept. 11, 2019), "has agreed with the denial of a First Step Act motion because the triggering quantity, over 5 kilograms, far exceeded the 280 gram amended amount." The pro se defendant in *Means* was proceeding under 18 U.S.C. § 3582(c)(2), not § 3582 (c)(1)(B). *Id*. at *1. The court affirmed the district court's denial of the defendant's multiple § 3582(c)(2) motions, stating that "the First Step Act modified only the relevant drug quantities for triggering the mandatory sentencing scheme in § 841, but did not modify the process by which the district court imposes a sentence, including its ability to determine the quantity of the drugs attributable to the defendant for sentencing purposes." It appears that the pro se defendant in *Means* was confusing the statutory change authorized by the First Step Act's retroactive application of FSA 2010, with retroactive guideline amendments. The opinion in *Means* is certainly not a definitive ruling by the Eleventh Circuit that PSR crack quantities may be used in lieu of jury findings beyond a reasonable doubt, or necessary guilty plea admissions to the statutory elements of violations of 21 U.S.C. § 841(b)(1)(A) and (B), to determine First Step Act eligibility.

## III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO REDUCE MR. WADLINGTON'S SENTENCE.

In *McDonald*, the Eighth Circuit held that a motion for a First Step Act sentence reduction "proceeds in two steps. First the court must decide whether the defendant is eligible for relief under § 404. Second, if the defendant is eligible, the court must decide, in its discretion, whether to grant a reduction." This is consistent with § 404(b)'s direction that a court "may" impose a reduced sentence, and the statement in § 404(c) that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *McDonald*, 944 F.3d at 772.

The First Step Act ultimately leaves the choice whether to resentence to the district court's sound discretion." *Beamus*, 943 F.3d at 792.  In exercising this discretion, courts should "look[] at the factors set out in . . . Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, [] post-sentencing conduct," and legal developments that have occurred since the time of the original sentencing.[11]  *United States v. Garrett*, 2019 WL 2603531, at *3 (S.D. Ind. June 25, 2019); *see also Pepper v. United States*, 131 S. Ct. 1229, 1243, 1249 (2011) (holding that post-sentencing developments, whether favorable or unfavorable to the defendant, bear directly on the court's duty to impose a reduced sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing); *United States v. Robinson*, No. 4:89-cr-4006, ECF No. 852, p. 16 (N.D. Fla. June 26, 2019) ("Like the court in *Rose* (and other courts as well), I conclude that, in exercising my discretion under the First Step Act, I may consider the applicable statutory limits, the non-binding sentencing guidelines, the sentencing factors set forth in 18 U.S.C. § 3553, the defendant's age, and post-sentencing conduct.").

In *United States v. Williams*, 943 F.3d 841, 843–44 (8th Cir. 2019), the court held that conducting a complete review of defendant's motion on the merits, as required by Section 404(c), does not necessarily require a court to hold a hearing before denying a motion to reduce sentence; but neither does it prohibit a court from holding a hearing if it chooses to do so.  Nor

---

[11] As emphasized by the court in *United States v. Simons*, 375 F. Supp. 3d 379, 381 (E.D.N.Y. 2019), since Mr. Wadlington's sentencing, there have been two clear statements of federal policy by Congress – the First Step Act and the Fair Sentencing Act of 2010 – that favor sending fewer people to prison, imposing shorter sentences for drug crimes, and reducing the sentencing disparity between crack and powder cocaine offenses.  These changes in Congressional policy regarding the treatment of crack offenders are certainly post-sentencing developments that must be taken into account when a district court determines whether to exercise its discretion to reduce a defendant's sentence.

does *Williams* limit the matters that the court may consider when exercising its discretion to grant or deny a Section 404 reduction.  In fact, *Williams* implicitly approves the consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a), and the defendant's post-sentencing rehabilitation.  *Id*. at 844.

The procedures governing sentence reductions under retroactive guideline amendments do not control First Step Act reductions.  First Step Act reductions are governed by 18 U.S.C. § 3582(c)(1)(B) and Section 404 itself.  The First Step Act allows a much broader scope of relief than the § 3582(c)(2) procedures applicable to retroactive guideline amendments.  "The discretionary relief authorized under Section 404 of the First Step Act is distinctly different [from the scope of relief under Section 3582(c)(2)]."  *See United States v. Thompson*, No. 1:05-cr-42, 2019 WL 4040403, *9 (W.D. Pa. Aug. 27, 2019) (citing *United States v. Dodd*, 372 F. Supp. 3d 795, 797 n.2 (S.D. Iowa 2019)); *United States v. Pierre*, 372 F. Supp. 3d 17, 22–23 (D.R.I. 2019); *see also Boulding*, 379 F. Supp. 3d at 653 ("The limits of 18 U.S.C. § 3582(c)(2) are inapplicable.  The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds."); *United States v. Askins*, No. CR-02-00645, 2019 WL 3800227, *6 (D. Ariz. Aug. 6, 2019) (same).

There is no language in the First Step Act that requires the defendant's guideline range to change in order to be eligible for a reduction.  It differs sharply in that respect from retroactive guideline reductions under 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10.  The First Step Act places no limits on the court's exercise of discretion under Section 404(c).  Other courts have recognized the breadth of that discretion and granted reductions even though there was no change in the defendant's guideline range.  *See e.g.*, *United States v. Garrett*, No. 1:03-cr-00062, 2019 WL 2603531, *3 (S.D. Ind. June 25, 2019); *United States v. Martin*, 03-cr-795, 2019 WL

2571148, *3 (E.D.N.Y. June 20, 2019).  Still others have exercised their discretion under Section 404(c) to grant reductions even when defendants were serving sentences which were the same as, or *lower* than their adjusted range under the current guidelines.  *United States v. Norman*, No. 1:08-cr-286, 2019 WL 3296830, *6 (W.D. Mich. July 23, 2019); *United States v. Hadley*, 389 F. Supp. 3d 1043, 1044–45, 1048–49 (M.D. Fla. 2019); *United States v. Brookins*, No. 08-166, 2019 WL 3450991, *7 (W.D. Pa. July 31, 2019).

The court's discretion to grant or deny a sentence reduction under the First Step Act is exponentially broader than the court's limited discretion under 18 U.S.C. § 3582(c).  Not only may the court consider the § 3553(a) factors, the defendant's post-offense rehabilitation, and his prison disciplinary record, but it may also consider the changes in the defendant's statutory mandatory minimum and maximum sentences, changes in the guidelines, particularly those related to drug quantity, and the intent of Congress to treat crack cocaine offenders less harshly. The court also has the opportunity to consider whether changes in the defendant's age and attitude reduce the risk of recidivism and any risk to public safety.

Obviously, the defendant's criminal conduct involved significant quantities of crack and powder cocaine, the possession of a dangerous weapon, a leadership role, and the use of minors. (PSR 61, 68, 71).  His offense conduct, however, is not an insurmountable obstacle to a Section 404 sentence reduction.  Congress understood "that the First Step Act would result in resentencing defendants with a history of significant criminal conduct, but did not make that a disqualifying factor." *United States v. Vanzant*, Crim. No. 08-00216-KD-C, 2019 WL 3468207, *2 (S.D. Ala. July 31, 2019).  Other defendants, whose original offenses involved large quantities of crack, leadership roles, and even violence, have been granted First Step Act reductions. *See United States v. Thomas*, No. 09-00117, 2019 WL 2375133, *3 (S.D. Ala. June

5, 2019) (granting a reduction to defendant who was "a drug user" and "a dealer of large amounts of crack cocaine," but who had no history of violence); *United States v. James*, No. 4:90-cr-04051-WS-GRJ, Doc. 823, p. 14 (N.D. Fla. May 21, 2019) (granting a reduction to a defendant who was the "leader of a large violence-prone drug conspiracy").

Like the defendant's criminal record, his offense conduct is a static sentencing factor. He cannot change what he did over 21 years ago. However, the more time that elapses between that conduct and the present, the less relevant his past conduct becomes to the court's present assessment of his risk of recidivism and danger to the public.

Mr. Wadlington has expressed profound feelings of guilt and remorse over the harm his criminal activity caused to the community. His trial attorney, Leonard C. Goodman of Chicago, Illinois, wrote a letter to Judge Wolle dated January 12, 2009, confirming Mr. Wadlington's remorse, as follows:

> I am writing only to let you know that Euka has often expressed great, and I believe sincere, remorse for his misconduct in this case. I advised Euka not to express his remorse at his sentencing hearing because I believed, mistakenly, that there was a good chance his conviction would be reversed and that his admissions would be used against him at a retrial. My advice turned out to be bad advice and resulted from my own inexperience.

(Ex. D).

More important, perhaps, than what Mr. Wadlington has said, is what he has done with his life while in BOP custody. He has devoted himself to developing skills that will enable him to give to his community, rather than take. Within his present community of other BOP inmates and staff, he has become a respected educator, mentor and role model.

Even a cursory review of official BOP records corroborates the foregoing characterization of Mr. Wadlington's current status. First, the Assignment History Report, shows that in 2008, Mr. Wadlington was transferred from the high security prison at Terre Haute

to a medium security facility at FCI Greenville.  (Ex. A, p. 6).  Furthermore, the BOP now rates

Mr. Wadlington's risk of recidivism as "low."  (Ex. A, p. 6).

BOP records show consistent, positive behavior by Mr. Wadlington over the last two

decades.  For example, the Assignment History Report also shows that with the exception of one

day of "vacation" on May 8, 2003, the defendant has been employed constantly since October 1,

1999.  (Ex A, p. 8).

During this same time period, Mr. Wadlington has completed 6,297 hours of educational

programming.  (Ex. B, pp. 1-9).  Much of his completed coursework has been aimed at

developing skill sets that would enhance Mr. Wadlington's opportunities to obtain employment

if he is ever released alive.  For example, he has completed a Commercial Driver's License

course (10 hours), 585 hours of Microsoft Office training, a 10-hour OSHA certification

program, a 4,120 hour Teacher's Aide Apprenticeship program, 360 hours of Vocational

Training on Computer Applications, and a 30-hour Basic Forklift class.  (Ex. B).  His other

academic coursework has included courses on Basic Geometry, Algebra, Mental Math, a writing

course on Grammar and Style, Typing, and Graphic Arts.  (Ex. B).

Mr. Wadlington's intense focus on furthering his education, particularly his Teacher's

Aide Apprenticeship, has allowed Mr. Wadlington to help other inmates, and assume greater

responsibilities within the BOP environment.  There is a letter from another inmate, Jesse

Webster, written in support of an unsuccessful clemency application, that attests to the

defendant's skill and compassion when tutoring his follow inmates.  (Ex. E).  He comments

specifically on Mr. Wadlington's "great patience" while tutoring him.  Mr. Wadlington tutored

Mr. Webster in the evenings and on weekends because Webster felt uncomfortable being in a

classroom with other students.  (Ex. E).

The defendant has also completed programming intended to change attitudes and criminal thinking patterns.  These courses have included a Reentry Simulation Program, Conflict Management, Lifestyle Intervention, Transition Preparation, Financial Peace, Parenting, and Reentry Prep.  (Ex. B).

Mr. Wadlington has also actively participated in the Suicide Prevention Companion Program.  (Ex. B).  This curriculum trains inmates to help other inmates who may be prone to suicide or self-harm.  As part of the training, the defendant was required to participate in group therapy sessions.  Being a Suicide Prevention Companion is a position of considerable trust within the prison and requires inmates who are perceptive and empathetic enough to relate to mentally distressed inmates and maintain a good working relationship with BOP staff.

In addition to official BOP records, the defendant's progress is corroborated by testimonial letters from BOP staff members.  The fact that prison staff were willing to write such letters is itself extraordinary.  They provide a vivid picture of how the defendant has comported himself and developed as a person over the past 20-plus years.

Amanda Hustedde, Special Education teacher at FCI Greenville, states that "Wadlington showed patience, determination, and dedication towards his student's success."  (Ex. F).  She noted his compassion in working with special education students, and his willingness to work with all students, regardless of their crime, their status or their race.  (Ex. F).  Ms. Hustedde also commends Mr. Wadlington for starting a mentoring program to help inmates understand how their own choices led to their imprisonment, and how to change their thinking to help ensure success when released.  (Ex. F).  She notes that she has seen positive changes in course participants, partly because of Mr. Wadlington's willingness to share his own experience and mistakes.  (Ex. F).  Mr. Wadlington's candor about his past crimes is certainly good evidence

that he has fully accepted responsibility for his criminal conduct, and confirms that the remorse noted by his former attorney in Exhibit D was genuine.

The other testimonial letters from BOP employees are submitted as Exhibits G-J, and will not be summarized in depth in this brief.  Collectively though, they paint a picture of a man who is a "model inmate always trying to lead a good example for the others to follow" (Ex. G), who tutors inmates no other tutor is willing to help, who has played a "vital role" in helping other students write marketable resumes, and coordinating mock job interviews.  (Ex. H).  B. Kelsheimer, a teacher at Terre Haute, wrote in 2008 that Mr. Wadlington developed the curriculum for the Grammar and Style class and taught the course on three separate occasions. (Ex. I).  Mr. Burton, a correctional counselor at USP Terre Haute, commented in 2008, that Mr. Wadlington "is always respectful of staff and the other inmates housed here."  (Ex. J).

The contrast between Mr. Wadlington's conduct in prison, and his offense conduct, as described in the PSR is quite stark.  Rather than being manipulative, he is cooperative.  Instead of exploiting others, he has dedicated himself to helping others better themselves.  Instead of fighting tooth and nail to avoid responsibility for his past crimes, he uses his past experiences to help younger inmates who have the likely prospect of release, avoid the pitfalls that put him in prison for life.  J. Kasten, the Education Specialist from FCI Greenville, provides a vivid glimpse of how Mr. Wadlington uses his own experience to help other inmates:  "He has never downplayed his faults or the actions that led him to his incarceration rather admitting them and expressing regret to the students for those choices.  This attitude is what made the mentor program so successful!!"  (Ex. H).

As might be expected from someone who has been so actively engaged in education and pro-social activity within the prison system, Mr. Wadlington has an exemplary prison

disciplinary record.  He has not had a single disciplinary violation in over 20 years in BOP

custody.  (Ex. C).  This is remarkable in view of the fact that he spent the first decade of his

imprisonment in the inherently violent environment of the U.S. Penitentiaries at Leavenworth,

Kansas and Terre Haute, Indiana.  (Ex. A, p. 7).

The defendant has already served over 21 years of his sentence.  (Ex. K).  The time

already served and its likely impact on his possibility of recidivism bear on the need to protect

the community.  *Thompson*, 2019 WL 4040403, at *10.  The defendant is now 54 years of age,

so he has reached an age of maturity when the likelihood of recidivism declines sharply.  *Id*. at

*2, n.3.  As noted in *Thompson*, data shows a steep decline in recidivism beginning at about age

35.  *Id*. (citing National Institute of Justice, *Five Things About Deterrence* (May 2016), at 2).  As

the district court found in *United States v. Edwards*, No. 95-CR-508-5, ECF 1212, p. 7 (N.D. Ill.

Aug. 8, 2019), the time he has already served should be sufficient for both general and specific

deterrence.  "[I]f someone is not chastened by the prospect of several decades in prison, then it is

unlikely that he will be deterred by any additional time."  *Id*.

At defendant's sentencing, the guidelines were mandatory, so even if the defendant had

not been facing a mandatory life sentence, he could not ask the court to vary below his guideline

range.  One of the primary changes that has occurred since the defendant was sentenced was the

Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which effectively

rendered the United States Sentencing Guidelines advisory, rather than mandatory.  That was

followed by the court's decision in *United States v. Kimbrough*, 552 U.S. 85, 101, 109 (2007),

making clear that sentencing judges "may vary . . . based solely on policy considerations,

including disagreements with the guidelines . . . ."

When the defendant was originally sentenced, the possibility that below guideline

sentences could be justified for any reason, let alone for policy reasons, was not on the legal

horizon.  Despite the fact that in the intervening years Congress and the Sentencing Commission

have taken significant steps to begin to reduce the differences in the way the federal judicial

system treats crack and powder cocaine defendants, a significant disparity still exists.  The crack

to powder ratio is still 18:1.  If Mr. Wadlington was a powder cocaine offender, a total of over 18

kilograms of powder would result in a base offense level of only 32 under current guidelines.

Applying the same specific offense characteristics, the defendant's total offense level as a

cocaine powder offender would be 40, which, at CHC VI, would yield a guideline range of 360

months to life.  In *United States v. Brookins*, Cr. No. 08-166, 2019 WL 3450991, *7, the court

considered the continuing disparity between crack and powder cocaine sentences in varying

downward from 240 to 180 months.  Such a variance is certainly congruent with the overall

purposes of the First Step Act.

Another important change is that if defendant was sentenced today, neither of his two

prior drug felonies would qualify as a serious drug felony under current law.  21 U.S.C. §

802(57).  At most, he served only about 11 ½ months on these charges.  (PSR 79, 80).  He was

sentenced in both cases on March 8, 1991, and was paroled on February 28, 1992.  (PSR 79,

80).[12]

Although Section 401 of the First Step Act is, by its terms, not retroactive, the fact that

congress has now changed the definition of § 851 predicates so that only "serious drug felonies"

qualify, and has drastically reduced the enhanced sentences available under § 841(b)(1)(A) for

---

[12] According to records introduced in Mr. Wadlington's § 2241 case noted above, one of those convictions would also be excluded as a § 851 predicate because it involved only possession.  21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2)(A)(ii).  Exhibit L is the docket sheet in Case No. 90CR11548 which indicates that on January 28, 1991, the defendant was found guilty of "PCS only," not possession with intent to deliver cocaine, as reported at paragraph 80 of the PSR.

those who do have prior serious drug felonies, is certainly a factor that may "inform" the court's exercise of its discretion under Section 404. *United States v. Norman*, 2019 WL 3296830, *5, n.7 (W.D. Mich. July 23, 2019).  In *Norman*, the defendant's guideline range under current guidelines was the same as his guideline range at the time of his original sentencing, and, in fact, at his original sentencing the court sentenced him below the applicable guideline range. *Id.* at *5–6.  The change in the definition of predicate offenses under § 851 was clearly taken into consideration, along with other sentencing factors under § 3553(a), to reduce the defendant's sentence from 240 months, the statutory mandatory minimum at his original sentencing, to a total term of 120 months imprisonment, but not less than time served. *Id.* at *2, 6.  *See also United States v. Hadley*, 2019 WL 3334348, *5–6 (M.D. Fla. July 24, 2019) (while observing that the First Step Act does not entitle a defendant to a plenary resentencing, the court nevertheless considers the fact that if Hadley were charged today his § 851 notice would no longer apply, among other factors, in reducing Hadley's sentence from life to time served.)[13]

      There was no reason, at defendant's original sentencing, for the court to consider whether the career offender guideline produced a sentence that was greater than necessary to achieve the purposes of federal sentencing under § 3553(a).  In the instant case, one of the defendant's career offender predicates only involved 5.7 grams of cocaine, and the other, 15 grams.  (PSR 79, 80). *See United States v. Copeland*, 2019 WL 2090699, *4-5 (W.D. Va. May 13, 2019) (relying in part on the relatively small crack quantities involved in the defendant's career offender predicates to reduce the defendant's sentence under Section 404).  In *Copeland*, one of the defendant's career offender predicates involved 6.56 grams, and the other 13.2 grams of cocaine. *Id.* at *4.  Also, in the instant case, Mr. Wadlington's two career offender predicates were

---

[13] Hadley's original sentence was mandatory minimum life in prison.

sentenced on the same day, and according to the dates of his arrests, occurred within only about 17 months of each other.  (PSR 79, 80).

In *United States v. Edwards*, No. 1:95-cr-00508, Doc. 1210, at pp. 7-8, the court relied heavily on the defendant's rehabilitative efforts, including his educational achievements, and his tutoring of other inmates, as strong indicators that the defendant would not reoffend.  Those efforts, plus the support Edwards had from his sister, were a major factor in the court's decision to reduce his sentence from mandatory life to time served (approximately 21 years).  Similarly, in *United States v. Brookins*, 2019 WL 3450991, *8 (W.D. Pa. July 31, 2019), the court noted the defendant's educational efforts, as exemplified by 14 certificates of achievement, his completion of the basic drug education course, his tutor and teacher's aide training, and his work tutoring other inmates seeking their GED's, as significant factors in reducing Brookins' sentence from 240 to 180 months.  In *United States v. Garrett*, 2019 WL 2603531, *4 (S.D. Ind. June 25, 2019), despite concerns about Garrett's history of violence, the court reduced his sentence from 360 to 216 months, relying on his completion of drug rehabilitation programming, more than 431 hours of character building courses, "as well as classes focused on achieving cognition, vocational, and interpersonal skills."

All of the foregoing defendants were serving lengthy sentences, up to and including mandatory life, for serious drug offenses.  Like the defendant in *Garrett*, Mr. Wadlington, when "[f]aced with a life sentence, could have given up on himself and on the prospect of any meaningful rehabilitative efforts.  Instead, he has shown commendable diligence and noteworthy success."  *Garrett*, 2019 WL at *4.  Like Edwards, Brookins and Garrett, the continued incarceration of Mr. Wadlington will not further any of the goals of federal sentencing.

## **CONCLUSION**

For all the foregoing reasons, the defendant requests that the court determine that he is eligible for a sentence reduction under Section 404 of the First Step Act.  He further requests an opportunity to be heard regarding the extent of any reduction granted by the court.

Respectfully Submitted,

*/s/ James Whalen*
James Whalen, Federal Public Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: jim_whalen@fd.org
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2020, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Theresa McClure*