IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal No. 3:98-CR-242 |
| v. | ) |
| | ) GOVERNMENT'S RESISTANCE |
| EUKA WADLINGTON, | ) TO DEFENDANT'S MOTION |
| | ) FOR REDUCTION OF |
| Defendant. | ) SENTENCE |
| | ) |

The United States of America, by and through its undersigned counsel,
respectfully files its brief in resistance to defendant's Motion for Reduction of
Sentence under Section 404 of the First Step Act (Court's Docket No. 544).

## INTRODUCTION

Defendant Euka Wadlington seeks a reduction in his life sentence under the
First Step Act.  Based on prior rulings of this Court, the government anticipates
that the Court will find Wadlington eligible for a sentencing reduction, which would
reduce his maximum sentence to 360 months.  For purposes of preserving its legal
position, however, the government will argue Wadlington is not eligible for relief
because his violation involved over 12 kilograms of cocaine base (i.e., well over the
280 grams set forth in the current version of 21 U.S.C. § 841(b)(1)(A).) (*See* PSR
¶ 61.)  And if the Court deems Wadlington eligible for a sentencing reduction, the
government maintains that Wadlington's sentence should be no less than 360
months, given the extensive duration and nature of his criminal conduct, the
relevant characteristics of his conspiracy (e.g., role, firearms, use of juveniles), and
Wadlington's criminal history.

1

## STATEMENT OF THE CASE

Wadlington was convicted under two counts of a superseding indictment filed April 8, 1999: conspiracy to distribute cocaine and cocaine base, 21 U.S.C. § 846, over an eight-year period (January 1990 until November 20, 1998) (Count 1); and attempted distribution of cocaine (October 28, 1998 until November 13, 1998) (Count 7).  (Court's Docket No. 97.)[1]  The government filed a notice under 21 U.S.C. § 851 that Wadlington was subject to an enhanced penalty because of two prior drug felony convictions.  (Court's Docket No. 103.)

In affirming Wadlington's conviction, the Eighth Circuit summarized the evidence as follows:

> Viewed in the light most favorable to the verdict, the evidence shows that from 1992 to approximately 1998, Wadlington was the leader in a drug organization that supplied cocaine and cocaine base to persons in Clinton, Iowa. Wadlington employed and supervised numerous persons who concealed, transported, prepared, and distributed the drugs. At least two of these individuals were juveniles. Government witnesses testified that the drug operation involved concealing cocaine in Tide detergent boxes and transporting the boxes from Chicago to several residences in Clinton where the drugs were cooked and distributed for re-sale in the Clinton area.

*United States v. Wadlington*, 233 F.3d 1067, 1073 (8th Cir. 2000).  As the court of appeals observed, "[t]he Government relied entirely on the testimony of

---

[1] Wadlington was acquitted of Count 2, which charged a distribution of cocaine base on December 6, 1996, under 21 U.S.C. § 841(a)(1).

Wadlington's co-conspirators as well as others involved in the Clinton drug scene to establish his guilt." *Id.*[2]

The presentence report, which was adopted by this Court (Hon. Charles R. Wolle, District Judge) (Sent. Tr. 254-55, 257), set forth a drug quantity that included over 12 kilograms of cocaine base. (PSR ¶ 61.)[3] This calculation, found by a preponderance of evidence, rested largely on the Court's credibility determinations. *See Wadlington*, 233 F.3d at 1081. Consistent with prevailing practice at the time, the alleged drug quantity was neither set forth in the indictment nor submitted to the jury.

The Court's drug quantity determination placed Wadlington at a base offense level of 38. (PSR ¶ 66.) Wadlington's offense level was then enhanced because of the possession of firearms (PSR ¶ 68), as well as upon Wadlington's role in the offense and his use of juveniles to commit his offense (PSR ¶ 71). This yielded a final offense level of 46 and a guideline range of life. (PSR ¶ 137.)[4] The Court imposed concurrent life sentences as to Counts 1 and 7. (Court's Docket No. 193.)

---

[2] Shortly before his arrest, Wadlington negotiated with an undercover officer for a one-kilogram quantity of cocaine, which Wadlington did not deliver. (PSR ¶ ¶ 39-40.)

[3] Wadlington's offense also involved almost 7 kilograms of (powder) cocaine.

[4] As Wadlington concedes (Br. 1-2, fn. 1; Br. 5 fn. 3), this sentencing range remains whether or not he remains categorized as a career offender. (*See* PSR ¶ 87.)

## ARGUMENT

**Whether Wadlington is eligible for relief under the First Step Act?**

Under the Fair Sentencing Act (as made retroactive by the First Step Act), the threshold quantity under 21 U.S.C. § 841(b)(1)(A) was increased from 50 grams to 280 grams.

Wadlington claims he is eligible for relief because he was convicted of a "covered offense" under the First Step Act. This, in turn, relies on his argument that the Court should consider only the statute of conviction as alleged in the indictment, rather than the significant drug amount found by the Court at sentencing. The government acknowledges that this approach is arguably consistent with the Eighth Circuit's discussion of the First Step Act in *United States v. McDonald*, 944 F.3d 769 (8th Cir. 2019). But the government suggests that *McDonald* is distinguishable because it involved a single count of distribution of cocaine base, *see id.* at 720, whereas this case involves conduct that occurred over an extensive conspiracy. Also, the government conceded that McDonald's distribution count was a "covered offense." *Id.* at 772. Here, for the record, the government does not made such a concession. Additionally, by referring to the 57 grams involved in McDonald's offense, *id.*, at 771, the panel presumably consulted the trial and/or sentencing record to confirm the amount in question. Here, the district court record unquestionably shows that Wadlington was responsible for well over 280 grams of cocaine base.

In similar circumstances, this Court ruled that a defendant should receive a reduced sentence (as if he had been convicted under 21 U.S.C. § 841(b)(1)(C)), where the relevant drug quantity was neither alleged in the indictment nor submitted to the jury. *United States v. Simmons*, Case No. 4:96-CR-112 (Order Filed November 25, 2019). Under this analysis, Wadlington – like Simmons – would face a statutory maximum sentence of 30 years because of the government's Section 851 notice. *See id.* at 7.

For the record, however, the government preserves its legal position that an alternative approach – sometimes called the "offense-controls" approach – should be applied in this case. *See, e.g., United States v. Crooks*, 2020 WL 255995 (D. Colo. Jan. 17, 2020); *United States v. Blocker*, 378 F. Supp.3d 1125, 1128-29 (N.D. Fla. 2019). Under this approach, discussed at length in the *Blocker* case, the Court should consider the amount of cocaine base actually involved in this offense, for four basic reasons:

*First*, the First Step Act refers to the underlying "violation" in defining the term "covered offense," and not to the indictment. 378 F. Supp.3d at 1129. Wadlington's violation of the drug conspiracy laws clearly involved more than 280 grams of cocaine base.

*Second*, the First Step Act calls upon the Court to "impose a reduced sentence *as if* … [the Fair Sentencing Act was] in effect *at the time the covered offense was committed*." *Id*. (italics original). As the court in *Blocker* explained, the answer to that question "does not turn on what the actual indictment charged, but on what it

5

would have charged, and what result it would have produced, had the Fair Sentencing Act been in effect at that time." *Id.*, at 1129-30.  Here, the government undoubtedly would have alleged that the conspiracy involved more than 280 grams of cocaine base, had the Fair Sentencing Act (and *Apprendi*) been in effect.

*Third*, the legislative history of the First Step Act indicates that Congress anticipated that eligibility would be based on the "offense-controls" theory.  *Id*. at 1130-31.  Otherwise, as pointed out by the court in *Blocker*, "every crack defendant sentenced before the Fair Sentencing Act took effect would be eligible for a reduction." *Id*.

*Fourth*, the "indictment-controls theory would produce anomalous results." *Id*.  As the court explained:

> The First Step Act was intended to make the Fair Sentencing Act's drug-quantity changes available to defendants who were sentenced before that Act took effect –to eliminate the disparity between earlier and later crack defendants. The indictment-controls theory would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants.

*Id*. at 1331.

Lastly, the government would add, even assuming some "error" based on the failure of the indictment to allege drug quantity greater than 280 grams, such an error would be subject, at most, to harmless error review, s*ee generally United States v. Allen*, 406 F.3d 940, 945 (8th Cir. 2005), and more likely plain error review. Prior decisions addressing similar fact patterns provide strong support for the government's position that Wadlington was not prejudiced by this failure.  *See*

*United States v. Cotton*, 535 U.S. 625, 632-33 (2002) (concluding that a failure to allege pre-*Apprendi* drug quantities in an indictment was not plain error when evidence of the drug quantity was "overwhelming" and "essentially uncontroverted"); *United States v. Higgins*, 710 F.3d 839, 846-47 (8th Cir. 2013) (finding a technical defect in an indictment for not alleging Fair Sentencing Act drug quantities did not seriously affect the fairness and integrity of the judicial proceedings and was not plain error); *United States v. Goodrich*, 754 F.3d 569, 572 (8th Cir. 2014) (reasoning that it was insufficient to show than an indictment was technically defective for listing 50 grams instead of 280 grams, when the district court made explicit findings beyond a reasonable doubt that the conspiracy involved in excess of 280 grams).   In fact, the courts concluded as much in Wadlington's own case, finding "the evidence at trial overwhelmingly supported the district court's adoption of the presentence report's" drug quantity findings.  *Wadlington v. United States*, 428 F.3d 779, 785 (8th Cir. 2005) (denying Section 2255 relief).

**Whether the Court should grant a reduced sentence as a matter of discretion?**

Assuming that Wadlington is eligible for a reduced sentence under the First Step Act, whether to grant relief is a matter within this Court's discretion.  *See McDonald*, 944 F.3d at 772.  Wadlington's new statutory maximum sentence (360 months) presumably would become his new guidelines sentence under USSG § 5G1.1(a).

Here, there are a number of reasons, based on the information available to the Court at the time of defendant's sentencing, that counsel against granting a

lower sentence.  Wadlington exercised a leadership role in an eight-year drug conspiracy that brought powder cocaine to Clinton, and then converted the powder into cocaine base for distribution.  Wadlington possessed firearms during the course of the conspiracy.  (PSR ¶ 31.)  Wadlington directed others, including two juveniles (PSR ¶ ¶ 26, 33) to commit criminal acts, sometimes resorting to physical violence.  For example:

> Beginning around 1994, [T.H.], who was approximately 14 years of age at the time, began to obtain crack cocaine from Wadlington for resale.  [T.H.] continued to sell crack for Wadlington until 1997.  [T.H.] received crack from Wadlington [and others].  At times, after receiving the drugs, Wadlington would direct [T.H.] to a residence where he would stay just to sell the drugs.  After he sold them, he would pay Wadlington and get another supply.  On several occasions, [T.H.] was beaten or electrically shocked when he did not have the money or when crack was missing.  This was done at the direction of Wadlington.[5]

(PSR ¶ 26.)

Also, at the age of 33 (PSR p. 2), Wadlington had two prior convictions for felony drug offenses.  (PSR ¶ ¶ 79, 80.)  And during his (brief) pretrial release, Wadlington attempted to contact witnesses against him "and made veiled threats to those individuals by contacting third parties close to the witnesses and having those persons relay information to the witnesses."  (PSR ¶ 3; *see also* PSR ¶ 6.)  Indeed, several years after Wadlington's sentencing, the Court observed (in the context of denying a motion under 18 U.S.C. § 3582(c)) that Wadlington's "severe sentence was necessary to protect the publis from defendant, who has never shown remorse nor

---

[5] On one occasion, not testified to at trial, [T.H.] had messed up some drugs and Wadlington took out a gun a told [T.H.] he could either shock himself with the Taser gun or shoot himself.  [T.H.] elected to shock himself.  [Original Footnote 4.]

accepted responsibility for very serious criminal conduct." (Court's Docket No. 507.)[6]

Wadlington asks this Court to focus on his post-offense conduct, which the Court may – but is not required – to consider. *United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019). Bearing in mind that the Court is directed to impose a new sentence "as if" the Fair Sentencing Act had been in effect at the original sentencing proceeding, *see United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019), those factors should be outweighed by the manner in which Wadlington presented at his original sentencing proceeding.

## CONCLUSION

The Court should deny Wadlington's motion to reduce his sentence. If the Court finds defendant eligible for a sentencing reduction, Wadlington's sentence should be reduced to no less than 360 months.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By:    */s/ Andrew H. Kahl*
Andrew H. Kahl
Assistant United States Attorney

U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa  50309
Tel:  (515) 473-9300
Fax:  (515) 473-9292
Email:  Andrew.Kahl@usdoj.gov

---

[6] In fact, Wadlington pursued a claim of actual innocence in his Section 2255 proceedings. *See Wadlington*, 428 F.3d at 782-84.

CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2020, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:


____U.S. Mail _____ Fax _____Hand Delivery


__X__ECF/Electronic filing    ____Other means

UNITED STATES ATTORNEY

By:  _/s/Andrew Kahl_____
      AUSA